[No. B057105. Second Dist., Div. Six. Sept. 17, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID PRETZER, Defendant and Appellant.

**COUNSEL**

Christopher L. Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Keith H. Borjon and Leslie P. McElroy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GILBERT, J.—Defendant David Pretzer appeals an order certifying him as a mentally disordered offender pursuant to Penal Code section 2962[1] and continuing his involuntary confinement and treatment at a state mental hospital. We affirm but hold Pretzer has a constitutional right not to be called as a witness to testify concerning "force or violence" used by him in committing his offense. (§ 2962, subd. (e).)

### FACTS

On July 13, 1989, petitioner David Pretzer pleaded guilty to two counts of false imprisonment. (§ 236.) The offenses arose from Pretzer's odd behavior at a Fresno cat hospital where Pretzer, pretending to be armed, forced the hospital employees to provide him with lethal drugs so that he might kill himself. The Fresno Superior Court sentenced him to three years imprisonment, including one year for a prior prison term served. (§ 667.5, subd. (b).) Pursuant to section 2684, Pretzer served his sentence at a state mental hospital.

Prior to Pretzer's November 17, 1990, parole release, prison officials certified him as a mentally disordered offender (MDO) pursuant to section 2962. This certification continued his involuntary confinement and treatment at Atascadero State Hospital. Pursuant to section 2966, subdivision (b), Pretzer petitioned the San Luis Obispo Superior Court for a hearing whether he indeed was an MDO within the criteria set forth in section 2962. After a court trial during which he was represented by a court-appointed attorney, the trial judge concluded Pretzer met the requirements of the MDO statute, beyond a reasonable doubt.

At trial the prosecutor presented two witnesses: Pretzer's hospital psychiatrist, Doctor John Dansereau, and Pretzer. Pretzer's attorney did not object to the prosecutor calling Pretzer as a witness nor did the trial judge apprise Pretzer of his constitutional rights against self-incrimination.

Doctor Dansereau testified Pretzer suffered from chronic paranoid schizophrenia, characterized by bizarre delusions and auditory hallucinations. He opined Pretzer was "grossly psychotic" and represented a substantial danger to others. Doctor Dansereau recounted recent assaultive behavior by Pretzer: within a week of trial, he had assaulted another patient and also had engaged in self-flagellation.

Pretzer testified he entered the cat hospital with a plastic razor in his coat pocket. He admitted he held the hospital's three employees "hostage" with

---

[1]Unless stated otherwise, all statutory references are to the California Penal Code.

the plastic razor: "They figured it was a gun . . . ." Pretzer stated he ordered the employees to a back room and instructed them to give him a "syringe full of poison." He injected himself with the drug "because [he] believed [he] was damaging people's souls."

The trial judge found Pretzer satisfied the criteria of section 2962, including the requirement that the crime for which he was convicted and sentenced was one involving "force or violence, or caused serious bodily injury as defined in paragraph (5) of subdivision (f) of section 243." (§ 2962, subd. (e).)[2] The court then ordered Pretzer confined and treated at a state mental hospital. His appeal followed.

## DISCUSSION

### I.

Pretzer contends he can not be an MDO because he did not use "force or violence" in committing the false imprisonment at the cat hospital. (§ 2962, subd. (e).) He argues that force and violence are synonymous and refer to physical power in motion, relying upon criminal jury instructions concerning assault and battery and dictionary definitions of force and violence. (CALJIC Nos. 9.60, 16.141; *People* v. *James* (1935) 9 Cal.App.2d 162, 163 [48 P.2d 1011].) Pretzer asserts his offense involved a threat of harm rather than application of physical power or strength. He reasons, therefore, his crime does not satisfy the "force or violence" requirement of section 2962, subdivision (e).

Pretzer's definition of "force" is too narrow. Whenever reasonable, we must accord significance to each word or phrase of a statute, avoiding redundancy and creating internal harmony. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114 [172 Cal.Rptr. 194, 624 P.2d 244].) It is unlikely the Legislature meant "force" and "violence" to be synonymous. Such interpretation would mean the statute is redundant.

The primary purpose of section 2962 is to protect the public safety. (*People* v. *Gibson* (1988) 204 Cal.App.3d 1425, 1433 [252 Cal.Rptr. 56].) Pretzer committed the crime of false imprisonment by conduct that implies force may be used. In *People* v. *Ross* (1988) 205 Cal.App.3d 1548, 1553-1554 [253 Cal.Rptr. 178], we said "[t]he crime of false imprisonment

---

[2]The trial judge also found these statutory requirements were met beyond a reasonable doubt: Pretzer had a severe mental disorder, not in remission; his mental disorder was a cause of his committing the false imprisonment; he had been in treatment at least 90 days prior to parole; and, by reason of his severe mental disorder, Pretzer represented a substantial danger of physical harm to others. (§ 2962, subds. (a), (b), (c), (d).)

requires some intended confinement or restraint to the person; any exercise of force or express or implied threat of force by which in fact the person is restrained from his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is such imprisonment." (Citing *People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186].) Although Pretzer may not have directly applied physical power against the hospital employees, his behavior in pretending to be armed posed a danger to them. Pretzer's acts could have invited resistance or escape with possible resulting injury to the employees, hospital patrons or Pretzer. We believe the Legislature meant "force" to have a broad meaning and to encompass such circumstances as these.

In the context of the robbery statute (§ 211), "force" is not limited to an application of power such as bludgeoning the victim. (*People* v. *Dreas* (1984) 153 Cal.App.3d 623, 628 [200 Cal.Rptr. 586].) The test is whether "'resistance is involuntarily overcome.'" (*Ibid.*) Thus, administration of intoxicating drugs that render the victim unconscious or dazed can constitute "force" within the robbery statute. (*Id.*, pp. 628-629.)

Here, by analogy to *Dreas*, the victims' resistance was overcome by Pretzer's manipulation of the plastic razor and his pretense it was a gun. Through deceit, Pretzer exerted power over the employees and overcame their resistance to escape. As such, Pretzer's acts satisfy the "force" requirement of section 2962.

## II.

Pretzer contends his constitutional right against self-incrimination was violated when the prosecutor called him to testify. He relies upon *People* v. *Gibson, supra,* where we stated "section 2962 has overwhelming penal attributes and therefore constitutes part of appellant's punishment for his criminal offense." (*People* v. *Gibson, supra,* 204 Cal.App.3d 1425, 1432.) Pretzer reasons that the constitutional privilege against self-incrimination applies in MDO hearings because arguably, they are criminal hearings in nature. He also points out the trial judge failed to apprise him of his constitutional right before he testified. The prosecutor's action and the trial judge's omission, Pretzer claims, constitute reversible error because his testimony was the only admissible evidence at trial of "force or violence" in the false imprisonment offenses. (§ 2962, subd. (e).)

In a criminal proceeding, an accused has an absolute right not to be called as a witness and not to testify. (U.S. Const., Amend. V; Cal. Const., art. I, § 15, as codified in Evid. Code, § 930; *Cramer* v. *Tyars* (1979) 23

Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793].) The historic purpose of the constitutional privilege against being called as a prosecution witness has been to assure that the criminal justice system remains accusatorial, not inquisitorial. (*Malloy* v. *Hogan* (1964) 378 U.S. 1, 11 [12 L.Ed.2d 653, 661, 84 S.Ct. 1489]; *Cramer* v. *Tyars, supra*, 23 Cal.3d 131, 137-138.) Thus, the state must convict and punish an individual by its independent efforts, not by compelling an accused to testify against himself. (*Estelle* v. *Smith* (1981) 451 U.S. 454, 462 [68 L.Ed.2d 359, 368, 101 S.Ct. 1866].)

■ Of course, this privilege does not apply to revelation of the witness's physical or mental characteristics where they are relevant to the issues being considered. (*Cramer* v. *Tyars, supra*, 23 Cal.3d 131, 137.) Thus, the prosecutor could call Pretzer as a witness to answer questions concerning his present mental condition. The status of Pretzer's present mental condition and whether he posed a substantial danger of physical harm to others were issues to be resolved by the trier of fact. (§ 2962, subd. (d).)

Pretzer's response to the prosecutor's inquiries regarding these issues would not be considered testimonial evidence within the privilege against self-incrimination, whether the proceeding is characterized as civil or criminal. (*Cramer* v. *Tyars, supra*, 23 Cal.3d 131, 139.) "Reason and common sense suggest that it is appropriate under such circumstances that a jury be permitted fully to observe the person sought to be committed, and to hear him speak and respond in order that it may make an informed judgment as to the level of his mental and intellectual functioning." (*Ibid.*) Such evidence is considered disclosure of physical as opposed to testimonial evidence. (*Ibid.*) Even a defendant in a criminal trial may be asked to stand, wear clothing, hold items or speak words. (*Ibid.*)

Here, the prosecutor called Pretzer to testify concerning the application of section 2962 to him and his offenses of false imprisonment committed at the cat hospital. Pretzer was also compelled to testify about his use of force or violence, issues not adjudicated during his criminal trial for false imprisonment. As we stated in *People* v. *Gibson, supra*, 204 Cal.App.3d 1425, 1434: "MDO's may be forced to defend against a criminal adjudication since whether the crime which resulted in the prison commitment 'involved the use of force or violence or caused serious bodily injury' may not have been adjudicated at the time of conviction. Unlike other involuntary commitment schemes which apply either to persons involved in certain specified offenses (see e.g., Welf. & Inst. Code, § 3052) or to any felony offender (see e.g., § 1026.5, subd. (b)(1)) the MDO scheme applies to persons who committed any felony offense only if it involved the use of force or violence or if it involved inflicting serious bodily injury. Except in those instances where

force, violence or serious bodily injury are elements of the offense or an enhancement thereof, a new adjudication relating to the offense may be required."

Pretzer's privilege not to be called as a witness to adjudicate the undecided issues of force or violence applies here in this MDO proceeding which has "overwhelming penal attributes and therefore constitutes part of appellant's punishment for his criminal offense." (204 Cal.App.3d at p. 1432.)

The Attorney General responds that in proceedings to extend the commitments of those not guilty by reason of insanity (§ 1026.5), judicial decisions have announced the constitutional privilege against self-incrimination is inapplicable. (*People* v. *Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 488 [284 Cal.Rptr. 601]; *People* v. *Beard* (1985) 173 Cal.App.3d 1113, 1118-1119 [219 Cal.Rptr. 225]; *People* v. *Henderson* (1981) 117 Cal.App.3d 740, 745-746 [172 Cal.Rptr. 858].)

The prosecutor's questions here, however, elicited more than evidence of Pretzer's mental condition; the questions elicited evidence of the force or violence present in his false imprisonment offenses. These elements were not adjudicated during trial of the false imprisonment charges. Evidence of force or violence, compelled by Pretzer's testimony, could only lengthen his commitment. As we stated in *People* v. *Gibson, supra,* 204 Cal.App.3d 1425, 1432, "[s]ection 2962 has overwhelming penal attributes and therefore constitutes part of appellant's punishment for his criminal offense."

Here, however, Pretzer's attorney did not object to the prosecutor calling him as a witness. Since he did not object to his being called as a witness upon issues of force and violence, Pretzer has waived this argument on appeal. (*People* v. *Ford* (1988) 45 Cal.3d 431, 442-443 [247 Cal.Rptr. 121, 754 P.2d 168, 76 A.L.R.4th 785]; *People* v. *Pugh* (1983) 145 Cal.App.3d 854, 859 [193 Cal.Rptr. 779].)

Pretzer claims the trial court erred by not advising him of his right not to testify when called by the prosecutor. He relies on *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146 [314 P.2d 164]. *Killpatrick,* however, concerned defendants who were not represented by counsel. There, defendants were ignorant of their privilege against self-incrimination because they "were without the aid of counsel." (*Id.,* p. 151.) Pretzer has not cited compelling authority requiring the trial judge to admonish a defendant concerning his right not to testify at trial when that defendant is represented by counsel.

Pretzer asserts his attorney did not provide effective assistance of counsel because he did not object to the prosecutor calling Pretzer as a

witness. To demonstrate a claim of ineffective assistance of counsel, a defendant must establish his attorney's performance was objectively unreasonable and that, but for his attorney's errors, the result of the proceeding would be different. (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 217-218 [233 Cal.Rptr. 404, 729 P.2d 839].) " 'In some cases . . . the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, these cases are affirmed on appeal.' [Citation.]" (*Id.*, p. 218.)

Here, the appellate record suggests no reason for counsel's failure to object, nor was counsel asked to give a reason. Moreover, the record shows that Pretzer eagerly testified and his attorney may have acquiesced to his testifying. Twice after the close of evidence, Pretzer interrupted the proceedings and declared that "[he would] like to witness considering some other points as well," and the plastic razor he used "was [a] Bic." Counsel also may have concluded Pretzer's explanation of his offenses would defeat evidence of force or violence, necessary to support a finding here under section 2962. Since the record sheds no light on the reasons for counsel's conduct, we must affirm the trial court's decision. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

Accordingly, the judgment is affirmed.

Stone (S. J.), P. J., and Yegan, J, concurred.

A petition for a rehearing was denied October 16, 1992.